UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICHOLAS S. C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:21-cv-01049-DLP-JRS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Plaintiff Nicholas S. C. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings.

### I.  PROCEDURAL HISTORY

On August 28, 2015, Nicholas protectively filed an application for Title II DIB and filed an application for Title XVI SSI. (Dkt. 18-2 at 11, R. 10). Nicholas's application alleged disability resulting from epilepsy, anxiety, and depression. (Dkt.

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

18-6 at 10, R. 243). The Social Security Administration ("SSA") denied Nicholas's claim initially on November 16, 2015, (Dkt. 18-3 at 28-29, R. 94-95), and on reconsideration on February 9, 2016. (Id. at 58-59, R. 124-25). On February 15, 2016, Nicholas filed a written request for a hearing, which was granted. (Dkt. 18-4 at 48-49, R. 172-73). On November 21, 2017, Administrative Law Judge ("ALJ") Gladys Whitfield conducted a hearing, where Nicholas, his counsel, and vocational expert Carrol Warren all appeared in person. (Dkt. 18-2 at 37, R. 36). On January 18, 2018, ALJ Whitfield issued an unfavorable decision finding that Nicholas was not disabled. (Dkt. 18-2 at 11-23, R. 10-22). Nicholas appealed the ALJ's decision, and, on January 22, 2019, the Appeals Council denied Nicholas's request for review, making the ALJ's decision final. (Dkt. 18-2 at 2-6, R. 1-5). Nicholas sought judicial review of ALJ Whitfield's decision in this Court on March 14, 2019. (Dkt. 18-9 at 2-3, R. 594-95). On August 15, 2019, the parties filed a joint motion to remand the matter for further proceedings. (Dkt. 18-9 at 6-7, R. 598-99). On August 19, 2019, Magistrate Judge Mark J. Dinsmore granted the motion and reversed and remanded the matter back to the Agency for further proceedings. (Dkt. 18-9 at 9-10, R. 601-602).

On September 18, 2019, the Appeals Council remanded the matter consistent with the Court's order. (Dkt. 18-9 at 12-16, R. 604-608). On March 31, 2020, ALJ Whitfield conducted a hearing, where Nicholas, his counsel, and vocational expert, Deborah A. Dutton-Lambert all appeared by telephone. (Dkt. 18-8 at 36, R. 568). On May 14, 2020, ALJ Whitfield issued an unfavorable decision finding that Nicholas

was not disabled. (Dkt. 18-8 at 17-27, R. 549-559). Nicholas now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II. STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v)[2]. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to disability insurance benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 416.920(a).

> (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(iv), (v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five.

4

*Id.* The Commissioner must then establish that the claimant – in light of his age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Nicholas is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute

its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Nicholas was twenty-six years old as of the alleged onset date of January 1, 2015. (Dkt. 18-8 at 19, 26, R. 551, 558). He has a high school education. (Dkt. 18-8 at 26, R. 558). He has past relevant work history as a production assembler. (Dkt. 18-8 at 25-26, R. 557-58).

#### B. ALJ Decision

In determining whether Nicholas qualified for benefits under the Act, the ALJ

employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Nicholas was not disabled. (Dkt. 18-8 at 17-27, R. 549-559). At Step One, the ALJ found that Nicholas had not engaged in substantial gainful activity since his alleged onset date of January 1, 2015. (Id. at 19, R. 551).

At Step Two, the ALJ found that Nicholas has severe impairments of a seizure disorder, headaches, depression, and anxiety. (Dkt. 18-8 at 20, R. 552). The ALJ also found that Nicholas had a nonsevere impairment of hypoglycemia. (Id.).

At Step Three, the ALJ found that Nicholas's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926, considering Listings 11.02, 12.04, and 12.06. (Dkt. 18-8 at 20-22, R. 552-54). As to the "paragraph B" criteria, the ALJ concluded that Nicholas had mild limitations in understanding, remembering or applying information and adapting or managing oneself, and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (Dkt. 18-8 at 20-22, R. 552-54).

After Step Three but before Step Four, the ALJ found that Nicholas had the residual functional capacity ("RFC") to perform "medium work," as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), with the following limitations: never climb ladders, ropes, or scaffolds; must avoid all use of hazardous moving machinery and all exposure to unprotected heights; can tolerate no more than occasional exposure to excess vibration, large bodies of water, or open flames; cannot work where driving is required to perform functions of the job; the noise level must not exceed level three or

7

moderate noise; there must be no strobe or flashing lights in the ordinary course of the business; there must be no fast-paced production requirements or assembly line type work; can attend to tasks for sufficient periods for completion; the work must not require complex written or verbal communications or complex decision making; limited to simple, routine, repetitive tasks, that is short cycle work, where routine tasks are performed over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption; the work must not require tandem tasks or teamwork; can tolerate no more than occasional, brief interaction with the public, coworkers, and supervisors; can tolerate no more than occasional routine workplace changes; can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work; can use judgment in making work-related decisions commensurate with simple, routine, repetitive work. (Dkt. 18-8 at 22, R. 554).

At Step Four, the ALJ concluded that Nicholas is unable to perform his past relevant work. (Dkt. 18-8 at 25-26, R. 557-58). The ALJ then concluded that, considering Nicholas's age, education, work experience, and residual functional capacity, Nicholas could perform jobs that exist in significant numbers in the national economy, such as floor waxer, hospital cleaner, counter supply worker, merchandise marker, mail sorter, router, addresser, document preparer, or printed circuit board assembly screener. (Id. at 26-27, R. 558-59). The ALJ thus concluded that Nicholas was not disabled. (Id. at 27, R. 559).

## IV. ANALYSIS

The Plaintiff presents several arguments in support of remand: the ALJ failed (1) to consider and weigh the medical opinion of a state agency consultative examiner; (2) to accommodate the social limitations found by the state agency reviewing physicians; and (3) to account for her own findings of moderate limitations in the RFC. (Dkt. 24).

### a. Dr. Yee's Opinion

First, Plaintiff argues that the ALJ erred by failing to analyze and weigh the medical opinion of state agency psychological consultant Dr. Jillian Yee. (Dkt. 24 at 25-26; Dkt. 29 at 1-2). "An ALJ is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in [her] decision." *Keith R. v. Kijakazi*, No. 20 C 4853, 2022 WL 580801, at *4 (N.D. Ill. Feb. 25, 2022) (citing *Lucio v. Barnhart*, No. 03 C 7078, 2004 WL 1433637, at *11 (N.D. Ill. June 22, 2004)). While an ALJ may discount the opinion of a consultative examiner, she must provide good reasons for doing so. *Johnny T. v. Saul*, No. 17 C 8671, 2020 WL 108442, at *5 (N.D. Ill. Jan. 9, 2020) (citing *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "Further, an ALJ can give less weight to a consultative doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." *Sandra P. v. Kijakazi*, No. 20 C 1771, 2022 WL 488742, at *3 (N.D. Ill. Feb. 17, 2022) (citing *Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (internal quotations omitted)).

Dr. Yee conducted a consultative psychological exam at the request of the SSA on November 9, 2015. (Dkt. 18-7 at 128-30, R. 489-91). Nicholas reported that he was not in therapy because his neurologist thought it was increasing his anxiety and that he got sad at times, lost motivation and interest in things, and felt helpless and hopeless. (Id. at 128, R. 489). He further reported long-term difficulties with attention and concentration. (Id. at 129, R. 490). Nicholas stated that he gets along "with people alright" but that he does not like to be around other people. (Id. at 130, R. 491). Dr. Yee diagnosed Nicholas with unspecified anxiety disorder and unspecified depressive disorder and included the following medical source statement:

> Cognitive abilities appeared to be within normal limits. He appears to have some difficulty interacting socially due to symptoms of anxiety. He might have some difficulty meeting new people and/or being around a lot of people. Working in an environment with the public may be difficult at times. He did not appear to have problems remaining attentive to the tasks requested of him although he reports that he has problems with attention and concentration related to reading comprehension. His level of persistence may be negatively impacted by some anxiety, some depressive symptoms and attention and concentration when it comes to reading comprehension. He would likely need a job where he has limited social interaction, help with motivation, help with staying on task and following through on tasks.

(Dkt. 18-7 at 130, R. 491).

The Commissioner maintains that the ALJ discussed and considered Dr. Yee's opinion and gave it "some weight." (Dkt. 25 at 5). On the Court's review, however, beyond summarizing Dr. Yee's opinion during the Step Two analysis, (Dkt. 18-8 at 20-21, R. 552-53), and identifying her examination findings during the RFC analysis (Dkt. 18-8 at 23, R. 555), the ALJ did not weigh this opinion or explain why Dr. Yee's opined limitations were not included in the RFC. While the ALJ weighed the state

agency reviewing physicians' opinions and gave them "some weight," she does not, however, address Dr. Yee's opinion.³ (Dkt. 18-8 at 24-25, R. 556-57). Under the regulations, the ALJ was required to explain the weight she gave to Dr. Yee's opinion and to explain why the opinion was or was not discounted. *Kenya F. v. Kijakazi*, No. 1:20-cv-02193-DLP-TWP, 2022 WL 612333, at *9 (S.D. Ind. Mar. 2, 2022). The ALJ summarized Dr. Yee's opinion, but did not state the weight it was given, and the Commissioner offers no justification for this omission. The ALJ's error cannot be considered harmless because the ALJ never grappled with Dr. Yee's opinion that Nicholas would require a job that would provide him with help with motivation, staying on task, and following through with tasks, limitations which were not provided in the hypotheticals to the vocational expert and could potentially have been disabling. As such, the Court remands for the ALJ to properly consider Dr. Yee's medical opinion.

  b. *State Agency Reviewing Physicians*

  Next, Nicholas challenges the ALJ's rejection of the state agency reviewing physicians' disabling opinion that he would require an RFC limitation to "superficial and ongoing" interaction with coworkers and supervisors. (Dkt. 24 at 17-25; Dkt. 29 at 2-3). Plaintiff notes that the Appeals Council remanded the matter back to the ALJ for further consideration of the reviewing physicians' opinion because the vocational expert testified that a limitation to superficial interaction with coworkers and

---

³ The ALJ indicates she is giving some weight to the "opinions of the physicians and psychologists with Disability Determination Services . . . ." (Dkt. 18-8 at 24, R. 556). The ALJ cites to Exhibits 1A, 2A, 5A, and 6A, which refer to the state agency reviewing physicians' opinion at the initial and reconsideration levels. These exhibits do not contain Dr. Yee's opinion.

supervisors would preclude all work. (Dkt. 18-9 at 15, R. 607). Despite that instruction, Plaintiff argues that the ALJ failed to adequately explain why she did not include a limitation to superficial interaction and instead chose to limit Nicholas to "brief, occasional" interaction. (Dkt. 24 at 17-25). The Commissioner maintains that the ALJ adequately explained her rationale regarding Nicholas's social limitations. (Dkt. 25 at 5-6).

State Agency reviewing physicians Drs. Maura Clark and Joelle J. Larsen both stated that Nicholas's allegations were credible and that the evidence suggests Nicholas can, in relevant part, "relate on a superficial and ongoing basis with coworkers and supervisors." (Dkt. 18-3 at 41, 55, R. 107, 121). In its remand order for the ALJ's original decision, the Appeals Council stated as follows:

> The Administrative Law Judge finds that the claimant has mental impairments of depression and anxiety [ ]and determines in part that these impairments result in a "moderate limitation" in interacting with others [ ]. In assessing the claimant's mental residual functional capacity, the corresponding mental non-exertional limitations are identified: the claimant can have superficial interaction with the public, and he can have occasional interaction with co-workers and supervisors [ ]. However, these mental non-exertional residual functional capacity limitations are not fully supported by any medical opinions in the record, the decision does not explain how they fully account for the claimant's "moderate limitations" in interacting with others, and the Administrative Law Judge does not provide a sufficient narrative discussion describing how the evidence supports these limitations, as required by Social Security Ruling 96-8p.
>
> Moreover, the Administrative Law Judge assigns "substantial weight" to the opinions of Drs. Clark and Larsen and indicates that additional mental limitations are included in the residual functional capacity finding [ ]. However, Drs. Clark and Larsen opined in part that the claimant "can relate on a superficial and ongoing basis with coworkers and supervisors" [ ], and no rationale is provided explaining why this opined limitations is not included in the residual functional capacity

12

> finding, despite assigning the opinions of Drs. Clark and Larsen "substantial weight". The residual functional capacity limits the claimant to occasional interaction with supervisors and co-workers, which is a limitation on the frequency of interaction, whereas Drs. Clark and Larsen limited the quality/type of interaction. Further, this is a material issue, because the vocational expert testified that if a hypothetical individual was limited to superficial interaction with co-workers and supervisors, this would preclude work [ ].

(Dkt. 18-9 at 14-15, R. 606-07).

Following remand, the ALJ assigned "some weight" to the opinions of Drs. Clark and Larsen. (Dkt. 18-8 at 24, R. 556). In her opinion, the ALJ noted that the record had been updated since the reviewing psychologists rendered their opinions and Nicholas had not received any further treatment for anxiety or depression. (Id. at 24-25, R. 556-57). Thus, the ALJ limited Nicholas to "no more than occasional, brief interaction with the public, coworkers, and supervisors." (Dkt. 18-8 at 22, R. 554). The ALJ further explained:

> In addition, [Nicholas] alleges depression and anxiety, yet there is no evidence of any counseling, therapy, or use of any medications designed to treat psychiatric or mental symptoms since 2014. He does report difficulty interacting with others, so the undersigned has limited him to no more than occasional, brief interaction with the public, coworkers, and supervisors. At the hearing, the vocational expert explained that "brief" means no sales, negotiation, or any type of conflict resolution. This addresses the quality and type of interaction as well as limited to simple, routine, and repetitive tasks. The record does not support that more limitations are necessary. His symptoms are managed with medications and without counseling or therapy. The record also shows he interacts ok with others. With regard to the limitation of superficial" and "ongoing" interactions, superficial is undefined in the opinions. The vocational expert defined "brief," and the record supports that the claimant can manage brief interactions. The undersigned has increased the limit to occasional, which the vocational expert defined as no more than one third of the workday, versus ongoing. The undersigned further

13

> reduced the work from semiskilled to simple, routine, and repetitive tasks, to reduce the need to interact with others.

(Dkt. 18-8 at 24, R. 556).

First, the Court acknowledges that the ALJ did attempt to follow the Appeals Council's instruction of considering the quality and type of interaction that Nicholas could manage in the workplace by limiting him to "brief" interactions. However, it is not at all clear how limiting Nicholas to "brief, occasional" interactions accommodates his limitations or accounts for the limitations explicitly found by the state agency reviewing psychologists. Here, the ALJ concludes that a limitation to unskilled work and to "brief, occasional" interaction addresses the quality and type of work that Nicholas can manage. (Id.) Although the ALJ states that "superficial" is not defined in the regulations, the Court notes that "brief" and "ongoing" are similarly undefined. At the hearing, the vocational expert described "brief" as meaning no sales, negotiation, or any type of conflict resolution. (Dkt. 18-8 at 58, R. 590). While the ALJ apparently accepts the vocational expert's definition of "brief," (Dkt. 18-8 at 58, R. 590), the Court notes that the ALJ does not appear to accept or recognize the previous vocational expert's definition of "superficial" which was explained as "maybe three ten-minute increments throughout the day." (Dkt. 18-3 at 62, R. 61). The ALJ does not explain why she accepted the definition of "brief," despite that definition not appearing in the regulations or opinions, but did not accept the definition of "superficial." Moreover, the ALJ never explains how a limitation to brief, occasional interactions accommodates the limitations found by her own state agency reviewing physicians. *See Kelli M. v. Saul*, No. 1:20-cv-01731-DLP-JRS, 2021 WL 4236802, at \*7

14

(S.D. Ind. Sept. 17, 2021) (error occurred where ALJ failed to explain why no further mental limitations were warranted); *see also Passig v. Colvin*, 224 F. Supp. 3d 672, 682 (S.D. Ill. 2016) (same); *Keith R. v. Saul*, No. 19 C 868, 2021 WL 308885, at *4 (N.D. Ill. Jan. 29, 2021) (citing *Lothridge*, 984 F.3d at 1233) (same).

The Court notes that a vocational expert already testified that a limitation to superficial interaction would preclude all work, (Dkt. 18-2 at 62-63, R. 61-62), so the Court is looking for a good reason why the ALJ did not adopt that disabling limitation from an agency physician. *See Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)) (rejecting the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation."); *see also Zima v. Comm'r of Soc. Sec.*, No. 3:20-CV-486 JD, 2021 WL 4237357, at *3 (N.D. Ind. Sept. 16, 2021) (quoting *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)) (when an ALJ rejects an agency doctor's finding, a good explanation is deserved because the agency's own doctor is "unlikely . . . to exaggerate an applicant's disability.") The ALJ provided a minimal explanation, but that explanation did not contain "a good reason" for discounting the state agency reviewing physicians' opinion.

Second, the Commissioner also contends that the ALJ justified her decision by considering that Plaintiff's anxiety symptoms were managed by medication and that he did not engage in any counseling or treatment. (Dkt. 25 at 6). However, the state agency physicians explicitly noted both of those points before concluding that

15

Nicholas's symptom allegations were credible and that he would be able to relate "on a superficial and ongoing basis with coworkers and supervisors." (Dkt. 18-3 at 40-41, 54-55, R. 106-07, 120-21). Thus, it is not clear why the ALJ further discounted the reviewing physicians' opinion for a reason that those physicians had already accounted for in their opinion.

Accordingly, the ALJ did not provide a good explanation for rejecting the state agency reviewing physicians' opinion on Nicholas's interaction limitations and remand is required for further consideration.

    *c. RFC Analysis*

Next, Plaintiff argues that the ALJ failed to account for her own findings of moderate limitations in concentration, persistence, and maintaining pace and interacting with others when assessing the RFC. (Dkt. 24 at 26-31). The Court has already determined that the ALJ erred by failing to consider and weigh the medical opinion of state agency consultative examiner Dr. Yee, which included proposed limitations for concentration, persistence, and pace, and to provide a good explanation for rejecting the state agency reviewing physicians' opinion regarding social interactions. As such, the Undersigned cannot determine whether the ALJ's RFC adequately accounts for Nicholas's limitations with concentration, persistence, and pace and interacting with others.

The Court does find it appropriate to briefly acknowledge Plaintiff's final argument, namely that the ALJ relied on the narrative portion of the state agency reviewing physicians' mental RFC without ensuring that it accurately reflected the

checkbox portion of the questionnaire. (Dkt. 24 at 30-31; Dkt. 29 at 3-8). In *Pavlicek v. Saul*, the Seventh Circuit concluded that ALJs can reasonably rely on the narrative portion of the state agency reviewing physicians' Mental Residual Functional Capacity Assessment ("MRFC"), as long as it is consistent with the "check-box" portion. 994 F.3d 777, 783 (7th Cir. 2021). ALJs, however, must consider whether the narrative portion adequately encapsulates and translates the checklist. *Id*. It is not entirely clear whether that consideration took place here. On remand, the ALJ is reminded of the obligation to acknowledge or grapple with the checkbox limitations found in the MRFC.

## V.    CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/26/2022

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.